**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 5, 2025**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 25-5099

(Consolidated with 25-5101, 25-5108, 25-5210, 25-5213, 25-5215)

JANE DOE; MARY DOE; SARA DOE,

*Plaintiffs-Appellees,*

*v.*

PAMELA BONDI, in her official capacity as Attorney General of the United States; WILLIAM K. MARSHALL, III, in his official capacity as Director of the Federal Bureau of Prisons,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the District of Columbia*

## BRIEF OF *AMICUS CURIAE* WOMEN'S LIBERATION FRONT IN SUPPORT OF APPELLANTS

NANCY STADE
WOMEN'S LIBERATION FRONT
1930 18th Street NW, Suite B2 #2036
Washington, DC 20009
(202) 507-9475
boardtreasurer@womensliberationfront.org

*Counsel for Amicus Curiae*

September 4, 2025



## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici

In Jones v. Bondi, plaintiffs in district court, and appellees here, are five inmates in the custody of the Federal Bureau of Prisons (BOP). With the permission of the district court, those inmates are proceeding pseudonymously in this litigation. Jones, Dkts. 14, 47. Their pseudonyms are Jane Jones, Amy Jones, Barbara Jones, Carla Jones, and Donna Jones. In Doe v. Bondi, plaintiffs in district court, and appellees here, are 14 inmates in the custody of BOP. With the permission of the district court, those inmates are proceeding pseudonymously in this litigation. Doe, Dkt. 7. Their pseudonyms are Jane Doe, Mary Doe, Sara Doe, Emily Doe, Zoe Doe, Tori Doe, Olivia Doe, Susan Doe, Lois Doe, Sophia Doe, Sally Doe, Wendy Doe, Rachel Doe, and Ellen Doe. In Moe v. Trump, plaintiff in district court, and appellee here, is an inmate in the custody of BOP. With the permission of the district court, plaintiff is proceeding pseudonymously in this litigation. Moe, Dkts. 7, 67. The pseudonym

being used is Maria Moe. In all three consolidated cases, defendants in district court, and appellants here, are Pamela Bondi, in her official capacity as Attorney General of the United States; and William K. Marshall, III, in his official capacity as Director of BOP.1 In Moe v. Trump, defendants in district court, and appellants here, also include Donald J. Trump, in his official capacity as President of the United States. In Jones v. Bondi, plaintiffs' original complaint also listed Donald J. Trump, in his official capacity as President of the United States, as a defendant. The Jones plaintiffs later omitted President Trump as a defendant in filing their Amended Complaint, and the President is thus no longer a party in that case. See JA341. There were no additional parties and no amici curiae in district court.

## Related Cases

This case has not previously been before this Court. We are aware of one related case within the meaning of D.C. Circuit Rule 28(a)(1)(C): Kingdom v. Trump, No. 1:25-cv-691 (D.D.C.)

**Rulings Under Review**

The rulings under review are the February 24, 2025, and March 3, 2025 Orders in Jones (Dkts. 28, 46); the March 10, 2025 Order in Moe (Dkt. 1 These actions were originally brought against defendant James R. McHenry, III, in his official capacity as Acting Attorney General of the United States, and defendant William Lothrop, in his official capacity as Acting Director of BOP. Attorney General Bondi was automatically substituted as a party under Federal Rule of Civil Procedure 25(d). Director Marshall was automatically substituted as a party under Federal Rule of Appellate Procedure 43(c)(2)); and the February 18, 2025, February 24, 2025, and March 19, 2025 Orders in Doe (Dkts. 44, 55, 68), entered by the Honorable Royce C. Lamberth, granting plaintiffs' motions for preliminary injunctions. Some of the orders are available at Doe v. Bondi, No. 1:25-cv-286, 2025 WL 596653 (D.D.C. Feb. 24, 2025); Doe v. McHenry, No. 1:25-cv-286, 2025 WL 596651 (D.D.C. Feb. 18, 2025); Jones v. Bondi, No. 1:25-cv-401, 2025 WL 923117 (D.D.C. Feb. 24, 2025); and Jones v. Bondi, No. 1:25-cv-401, 2025 WL 923755 (D.D.C. Mar. 3, 2025). The orders are located in the Joint Appendix at JA168-69 (Doe February 18 Order), JA185-88 (Doe February 24 Order), JA240-43 (Doe

March 19 Order), JA333-34 (Jones February 24 Order), JA445-49 (Jones

March 3 Order), and JA569-71 (Moe March 10 Order).

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus curiae states it is a non-profit 501(c)(3) organization. Amicus curiae has no corporate parent and is not owned in whole or in part by any publicly-held corporation

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ...................................................................i

CORPORATE DISCLOSURE STATEMENT ............................................ v

TABLE OF AUTHORITIES ................................................................ vii

ISSUE PRESENTED ......................................................................... viii

INTEREST OF AMICI WOMEN'S LIBERATION FRONT (WoLF) ....... viii

SUMMARY OF THE ARGUMENT ....................................................... 1

ARGUMENT .................................................................................... 4

    I.    When The Balance of the Equities Includes the Effect
        on Women. Plaintiffs Have Not Shown, and Cannot
        Show, A Likelihood Of Success On The Merits ..................... 4

    II.    The Judge Abused His Discretion by Issuing the
        Preliminary Injunctions ............................................ 8

    III.    Some of the Harms That Women Have Suffered By
        Being Confined With Men Have Been Publicized, But
        Ignored ................................................................ 11

CONCLUSION ........................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes & Other Authorities:**

Exec. Order No. 14168,
   Defending Women From Gender Ideology Extremism and
   Restoring Biological Truth to the Federal Government,
   90 Fed. Reg. 8615 (Jan. 30, 2025)........................................3, 11, 13

Langevin, R., Lang, R.A., Wright, P. et al., Identifying violence-
   proneness in sex offenders. Annals of Sex Research (1989)............6

Long-Term Follow-Up of Transsexual Persons Undergoing Sex
   Reassignment Surgery: Cohort Study in Sweden, Dhejne
   C, Lichtenstein P, Boman M, Johansson ALV, Långström
   N, et al. (2011) 22;6(2):e16885. ........................................7

Nolan IT, Kuhner CJ, Dy GW. Demographic and temporal
   trends in transgender identities and gender confirming
   surgery. ........................................7

Steiner, Benjamin, et al., "The Impact of Inmate and Prison
   Characteristics on Prisoner Victimization." Trauma,
   Violence & Abuse, vol. 18, no. 1, 2017 ...............................5

Stoller, Robert J., Presentations of Gender,
   1985 Yale University Press...............................6

## ISSUE PRESENTED

Whether the district court abused its discretion in granting preliminary injunctions blocking the transfer of male trans-identifying inmates to male facilities, on the ground that any such transfer violates the Eighth Amendment.

## INTEREST OF AMICI WOMEN'S LIBERATION FRONT (WoLF)[1]

Amici are Women's Liberation Front (hereinafter WoLF) staff, members, and volunteers. WoLF is a non-profit feminist organization dedicated to the liberation of women, ending the corrosive effects of gender identity on women, ending the exploitation of women, and promoting freedom by fighting coercive control, dehumanization, and violence. WoLF's supporters include over 400 "sisters in action" who advocate for its mission and attend school, work in education, and live across the U.S. WoLF's interest in this case stems from its interest in empowering and protecting the rights of women. Among WoLF's core tenets is that women and men are biologically and materially different

---

[1] No counsel for any party authored any part of this brief, and no party, their counsel, or anyone other than WoLF, has made a monetary contribution intended to fund its preparation or submission.

and women have a right to and need sex-segregated spaces.  WoLF submits this brief to advance and defend that principle, most especially in prison where the women have no choice but to remain.

## SUMMARY OF THE ARGUMENT

Plaintiffs cannot demonstrate a likelihood of success in their legal challenge because housing transgender-identifying male inmates in female prisons poses significant risks to women and lacks sufficient justification. Data shows that most trans-identifying male inmates choose to remain in male facilities, where sexual assault rates are often lower than in female prisons. In female facilities, these individuals have been documented assaulting women, who are then punished for reporting. Over half of trans-identifying male inmates were incarcerated for sex offenses—nearly four times the rate of the general prison population—and a disproportionate number are classified as high-security risks. Historical studies link gender dysphoria and cross-dressing with violent sexual crimes, and research suggests that transitioning does not reduce male-pattern criminality. Many trans-identifying inmates retain male anatomy and discontinue hormone therapy after transfer to female prisons. Additionally, they receive preferential treatment, including special housing, cosmetics, and surgeries, which female inmates do not receive. WoLF concludes that

these policies prioritize the rights of trans-identifying males over the safety and dignity of incarcerated women.

The rights and safety of female prisoners have been systematically neglected, even by prominent civil rights and women's organizations such as the ACLU, NOW, and the National Women's Law Center, which prioritize gender identity over women's concerns. Women who speak out—whether inside or outside prison—face silencing, professional retaliation, or disciplinary punishment. The judge's opinion in the referenced case favored [] the emotional discomfort of transgender-identifying male plaintiffs over the tangible harms experienced by incarcerated women. The judge acknowledged that trans-identifying men may suffer psychological distress from being housed in male prisons or referred to as male, but he dismissed the documented trauma women endure from sharing intimate spaces with biologically male inmates. The ruling minimizes the impact on women by citing the small number of trans-identifying males in female facilities, despite evidence that even one male inmate can cause significant harm to a larger number of women. Many of these individuals are statistically more likely to have committed sexual offenses and a majority report sexual attraction to

women. The current approach undervalues women's suffering and undermines their safety and rehabilitation.

The persistent neglect of incarcerated women's safety, despite public exposure of the harms they endure when housed with men, have led to the complete avoidance of the issues women face in prison. The United Nations' position that imprisoning women alongside men constitutes a human rights violation, yet only with Executive Order 14168 in 2025 did efforts begin to formally separate them in custody. Empirical evidence underscores women's heightened vulnerability to abuse during arrest and imprisonment, including sexual violence, invasive searches, and degrading treatment. Once incarcerated, women may face rape, forced prostitution, and constant surveillance in intimate settings. Women's needs in detention are distinct from those of men, including trans-identifying males, international standards—such as the Bangkok Rules and the Geneva Convention— explicitly advocate for gender-specific protections and housing. Systemic failure to uphold these standards continues to expose female prisoners to preventable harm.

# ARGUMENT

I. **When The Balance of the Equities Includes the Effect on Women. Plaintiffs Have Not Shown, and Cannot Show, A Likelihood Of Success On The Merits.**

First, it is necessary to dispose of the argument that men identifying as women are at risk in men's prisons. As explained in the government's brief, 99% of male inmates identifying as transgender chose to remain in the male prisons. [Govt. Br. 2-3]. And, rates of sexual assaults in male prisons are generally low, sometimes less than the rates of assault in female prisons.[2] [Govt. Br. 2-3]. It is noteworthy that in the female facilities that house males identifying as transgender, the male inmates are known to assault the female inmates.[3] And women are punished for reporting the assault. See e.g., h[ttps://genevievegluck.substack.com/p/exclusive-trans-identified-male-](https://genevievegluck.substack.com/p/exclusive-trans-identified-male-)

---

[2] This is not surprising considering that female prisoners are more likely than male prisoners to be sexually assaulted and less able to defend themselves from male prisoners.

[3] Women have reported to WoLF that they often are discouraged from reporting these assaults, receive disciplinary action or further harassment if they file a complaint, and that the typical response of the prison, if there is one, is to place the male in a segregated housing unit (SHU) for a few days and then return him to the general population of women. Thus the number of assaults on women is underreported.

held. Accessed 8/27/25.   Protecting the men is valued over protecting the women.

Second, the men who identify as women in prison are dangerous to women. Information obtained through a FOIA request shows that between May 2024 and January 2025, 51 percent of men identifying as "transgender" were incarcerated for sex offenses. https://usa.kpssinfo.org/federal-bop-transgender-inmate-report-january-2025/ Visited 8/26/25.  This number is almost four times as high as the number in the general Federal Bureau of Prisons population. Id.  This statistic supports the argument that factors other than the fact that a male prisoner identifies as transgender, such as sexual offenses against women and children,  are what place these men at risk. Steiner, Benjamin, et al. "The Impact of Inmate and Prison Characteristics on Prisoner Victimization." Trauma, Violence & Abuse, vol. 18, no. 1, 2017, pp. 17–36.  JSTOR, https://www.jstor.org/stable/26638159.  Accessed 8/27/25.

Third, men identifying as transgender are statistically higher security risks compared to men who do not identify as transgender. 33% of men who say they are 'trans' are designated as high security risks, but

only 11% of the general population holds this classification. https://roarwomennyc.com/2025/07/18/myth-vs-fact-men-in-womens-prisons/#myth2 Visited 8/26/25.

Fourth, a fact that had been known for years in law enforcement is now ignored. Sexual homicide perpetrators have been found to have a high occurrence of genital and gender dysphoria. Stoller, Robert J., Presentations of Gender, 1985 Yale University Press. In a 1988 study of sexual homicide killers, 54% were cross-dressers or transvestites. Today, these men would be called "transwomen." Langevin, R., Lang, R.A., Wright, P. et al. Identifying violence-proneness in sex offenders. Annals of Sex Research 2, 49–66 (1989). https://doi.org/10.1007/BF00850679 Visited 8/26/25. Davis killer in grisly 2013 slayings will stay in prison after judges reject appeal attempt, https://www.sacbee.com/news/local/article254085413.html

Fifth, men who identify as women, regardless of hormone therapy, lowered testosterone, or surgery, maintain male levels of criminality. https://murrayblackburnmackenzie.org/wp-content/uploads/2021/04/mbm-briefing-on-dhjene-et-al.-april-2021-1.pdf Accessed 8/28/25

Additionally, some trans-identifying men discontinue hormone treatment upon transferring to women's prisons to be able to have erections. Long-Term Follow-Up of Transsexual Persons Undergoing Sex Reassignment Surgery: Cohort Study in Sweden, Dhejne C, Lichtenstein P, Boman M, Johansson ALV, Långström N, et al. (2011) 22;6(2):e16885. doi:10.1371/journal.pone.0016885 Fewer than 15% of trans-identifying males have undergone genital surgery. Nolan IT, Kuhner CJ, Dy GW. Demographic and temporal trends in transgender identities and gender confirming surgery. Transl Androl Urol. 2019 Jun;8(3):184-190. doi: 10.21037/tau.2019.04.09. PMID: 31380225; PMCID: PMC6626314.; https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0016885 Accessed 8/26/25.

Sixth, the men identifying as women receive better treatment and amenities. A woman in Central California Women's Facility reported that "these men or transgender persons get to decide where they want to live; prison and/or room. If women object to them getting moved into a room, the women will be moved to accommodate the transgender person. Essentially, the men or transgender has more rights than a woman in a women's prison." No other group of prisoners gets this special treatment.

7

https://roarwomennyc.com/2025/07/18/myth-vs-fact-men-in-womens-

prisons/#myth1 Visited 8/26/25.  Moreover, such men may obtain special

clothes, cosmetics, cosmetic surgery, including breast implants and facial

feminization. Needless to say, women do not get these benefits to enhance

their feeling of "femininity." https://roarwomennyc.com/2025/07/18/myth-

vs-fact-men-in-womens-prisons/#myth1  Visited 8/26/25.

## II.   The Judge Abused His Discretion by Issuing the Preliminary Injunctions.

The interests of female prisoners have consistently been ignored.

Civil rights organizations and women's organizations, such as the ACLU,

NOW, and even the National Women's Law Center, have abandoned

women in favor of supporting gender identity.  When women have

attempted to be heard they have found that they are ignored, silenced,

fired, or shunned. And, if they are in prison and complain, they are

subjected to disciplinary measures.

The judge's opinion reflects either the absence of briefing on behalf

of women in prison, or the presumption that male suffering of any

degree outweighs female suffering of any degree. The judge seemingly

agrees that, for the men, mere "placement in a male penitentiary by

itself will exacerbate the symptoms of their gender dysphoria, even if

they are not subject to physical or sexual violence in their new facility."

The judge includes in the harms claimed by Plaintiffs that they would

be, "made to shower in the company of men" and that "simply because

the mere homogenous presence of men will cause uncomfortable

dissonance." There has been no similar relief for incarcerated women

subjected to the presence of men in their showers, toilets, and sleeping

quarters,  and no concern for the heterogeneous presence that causes

actual harm to women and undermines their rehabilitation.

https://usa.kpssinfo.org/eo-litigation-does-versus-trump-tro/      Visited

8/26/25.

    The judge also included as a harm that men in a men's prison would

be "referred to as men."  Yet, the actual harms to women are minimized

or ignored.  In this case, in the underlying order granting the temporary

restraining order the judge dismissed the harms to women, writing

"[e]ven if the Court credits the Executive Order's representation that

housing biological males in female penitentiaries has some deleterious

effect on privacy and security, … there are only about sixteen male-to-

female transgender women housed in female penitentiaries." Thus,

according to the judge "the balance of the equities and the public interest favor the plaintiffs."

Not only is this a blatant over-valuing of the intangible concerns of men who claim to identify as women, it completely ignores, devalues, and underestimates the concerns of and harms to women when incarcerated with men who are statistically more likely than not to have been convicted of sexual offenses.  Moreover, just one male in a female prison can cause incalculable harm to the women in the unit, regardless of how many women are in the unit. "Female prisoners are routinely harassed, attacked, and sexually assaulted by the men they are forced to share cells, showers, and toilets with. In some prisons, women take turns staying awake to safeguard each other against attacks by men in the night." https://roarwomennyc.com/2025/07/18/myth-vs-fact-men-in-womens-prisons/#myth1  In fact 60% of trans-identified males say they are sexually attracted to women. https://roarwomennyc.com/2025/07/18/myth-vs-fact-men-in-womens-prisons/#myth1  Visited 8/26/25.

**III.     Some of the Harms That Women Have Suffered By Being Confined With Men Have Been Publicized, But Ignored.**

Perhaps it is because they are women and prisoners, but some of the harms suffered by women in prison with men have been made public, but nothing has changed for them. See Appendix.  Despite the fact that the United Nations has stated that imprisoning women with men is a human rights violation, not until the BOP attempted to implement Executive Order 14168  did anyone attempt to insure that women are separated from men when in custody.  Exec. Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,90 Fed. Reg. 8615 (Jan. 30, 2025). Furthermore,

> "[e]mpirical evidence shows that women have a heightened vulnerability to mental and physical abuse during arrest, questioning and in prison. Many women detainees face inhuman and degrading treatment during arrest, interrogation and in custody including stripped naked, threats of rape, touching, "virginity testing", invasive body searches, insults and humiliations of a sexual nature or even rape. Once imprisoned, women may be subjected to several forms of violence such as rape by other inmates and guards, forced into prostitution, touched in a sexual manner during frisks, watched while showering or using toilets and required to wear revealing prison uniforms."
> https://www.ohchr.org/sites/default/files/Documents/Issues/Women/WRGS/OnePagers/Women_and_Detention.pdf

The needs of incarcerated women are substantially different from those of men, including men identifying as women. The Twelfth United Nations Congress on Crime Prevention and Criminal Justice, known as "the Bangkok Rules" specifically recognized these needs and clearly stated that women should not be housed with men. https://www.ohchr.org/sites/default/files/Documents/ProfessionalInterest/BangkokRules.pdf The Geneva Convention is consistent with this position. https://ihl-databases.icrc.org/en/customary-ihl/v1/rule119

## CONCLUSION

In light of the information provided above, the court should vacate the preliminary injunctions,  permit the Bureau of Prisons to implement Executive Order Number 14168, and remand these matters for trial.


<u>/s/ Nancy Stade</u>
Nancy Stade
Women's Liberation Front
1930 18th Street NW, Suite B2 #2036
Washington, DC 20009
(202) 507-9475
[BoardTreasurer@womensliberationfront.org](mailto:BoardTreasurer@womensliberationfront.org)
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29(d), because this brief contains 2,215 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated:  September 4, 2025                    /s/ Nancy Stade
                                             Nancy Stade

14

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the Court's CM/ECF system on September 4, 2025, which will send notice of such filing to all counsel who are CM/ECF registered users.

Dated:  September 4, 2025            /s/ Nancy Stade
                                    Nancy Stade

# APPENDIX

## Examples of Male Inmates Who Harmed Incarcerated Women

| | |
|---|---|
| Justin "Justine" Randall-Pizzaro | While housed in a women's prison in New York, Randall-Pizzaro attacked a female inmate by punching her and stomping on her head and hands. |
| Ramel "Diamond" Blount | Blount raped a female inmate while housed in a women's prison in New York. He attacked the victim just after she finished showering. |
| Christopher Williams | Williams was convicted of a sex offence and originally incarcerated in a men's facility, where he assaulted a corrections officer. Once transferred to a women's prison in Washington, Williams harassed and sexually abused his cellmate, including while she slept. |
| Richard Masbruch ("Sherri Lashure") | Masbruch was incarcerated for crimes including rape, kidnapping, and torture. While housed in a men's prison, he amputated his own penis. He was transferred to a California women's prison, where he raped and sodomized multiple female inmates. |
| Rodney James ("Shiloh Heavenly Quine") | James was incarcerated for crimes including kidnapping and murder. While housed in a women's prison in California, he sexually harassed and threatened multiple female inmates. |

| | |
|---|---|
| Andre Patterson ("Janiah Monroe") | Patterson, who is over six feet tall, strangled his cellmate in a men's prison with his bare hands. After being moved to an Illinois women's prison, he raped a female inmate and sexually assaulted multiple others. |
| Michael "Michelle" Cole | Cole raped his female cellmate in a county jail in Ohio. |
| Brian "Linda Patricia" Thompson | On at least two occasions, Thompson robbed banks with the stated goal of returning to prison. When he was housed in a women's facility in Oregon, he harassed and threatened to rape female inmates. |
| Hobbie Bingham ("Princess Zoee Andromeda-Love") | Andromeda-Love is a registered sex offender who sexually assaulted a 12 year-old girl. In a Washington women's prison, he groomed and raped a woman with a developmental disability, who prison records say had the "disposition of a young child." |
| Jovanie Saldana | Saldana was housed in a Pennsylvania women's prison for over a year. He sexually harassed multiple female inmates, and was only transferred out of the facility after he reported being the victim of an assault. |

| | |
|---|---|
| Tremaine Deon Carroll | Carroll raped multiple female inmates while housed at a women's prison in California. His first cellmate became pregnant. During subsequent criminal proceedings against Carroll for forcible rape, a judge ordered that Carroll be referred to using she/her pronouns. |
| Demetrius "Demi" Minor | Minor sexually assaulted a female inmate on multiple occasions while housed in a women's prison in New Jersey. |
| Nathan Goninan ("Nonnie Marcella Lotusflower") | Lotusflower was placed in a women's prison in Washington after sexually assaulting and raping a teen girl. While there, he assaulted a female correctional officer, sexually assaulted a female inmate, and punched another inmate in the face. He has repeatedly threatened female inmates and staff during violent outbursts. |
| Jermaine "Cyntara" Gibson | While housed in a women's prison in New Jersey, Gibson sexually harassed a female inmate and purposely exposed his genitals. After the woman refused to have sex with Gibson, he repeatedly punched her in the head. |
| Jonathan Robertson ("Siyaah Skylit") | Robertson was incarcerated in a women's prison in California, where he raped a female inmate until she was unconscious and needed emergency |

A3

| | medical care. He also spit on and threatened to rape female inmates. |
|---|---|